_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JUL 2 4 2012

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ nld _____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MASSACHUSETTS MUTUAL LIFE    *
INSURANCE COMPANY    *
   *
     Plaintiff,    *
   *
v.    *      Civil No. PJM 10-336
   *
EVELYN R. SINKLER    *
   *
     Defendant    *
   *

## MEMORANDUM OPINION

Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual") seeks a declaratory judgment against Defendant Evelyn R. Sinkler ("Sinkler") with respect to a disability income insurance policy Sinkler at one time held with MassMutual (the "Policy"). MassMutual asks that the Court declare (1) that the Policy lapsed for non-payment of premiums, that coverage under the Policy has terminated, and that no benefits are due and payable; and, in the alternative, (2) that the Policy gives MassMutual the right to conduct an independent medical examination ("IME") of its insured as it determines may be necessary and that unless Sinkler submitted to an IME (which she did not) MassMutual would have no obligation to release any benefits to her. The case is before the Court on the parties' cross-motions for summary judgment.[1]

For the reasons that follow, MassMutual's Motion for Summary Judgment [Docket No. 77] will be **GRANTED**, and Sinkler's Motion for Summary Judgment [Docket No. 70] will be **DENIED**.

---

[1]  In correspondence to the Court, Sinkler has argued that MassMutual's reply briefs were untimely filed. The Court, however, will consider all briefs submitted by both parties relating to the instant motions.

## I.

On October 5, 2001, Sinkler applied for MassMutual's Disability Income Protection Plan, listing her employer as Cherry Engineering Support Services, Inc. MassMutual issued the Policy to Sinkler on April 11, 2002. The Policy provided for payment of a monthly benefit in the event of a sickness or injury that precluded Sinkler from performing the main duties of her occupation. Before it would pay the monthly benefit, the Policy required written proof of any loss—including proof of the claimed disability and a statement of income before and during the disability. The Policy stated that failure to make premium payments within the prescribed time period would result in termination of the Policy but provided for a waiver of premium during the pendency of a qualified disability.

In March 2005, Sinkler submitted a claim for Total Disability based on rheumatoid arthritis. The claim form indicated that her symptoms first appeared in March 2003, that she was employed as a senior systems analyst at Benton Enterprises, and that her last day of work prior to disability was in September 2004. MassMutual received an Attending Physician's Statement from Sinkler's rheumatologist reflecting a diagnosis of rheumatoid arthritis in 2003, which indicated that restrictions on her ability to work began in September 2004.

In February 2006, Sinkler amended her claim to include claims of mental health disabilities. In connection with this amendment, MassMutual received an Attending Physician's Statement from Sinkler's psychiatrist reflecting a diagnosis of major depression and stating that Sinkler was unable to perform any work beginning in May 2004.[2]

---

[2]   This same psychiatrist submitted subsequent Attending Physician's Statements that included contradictory and unsupported diagnoses. One such Statement stated that her inability to work began in April 2003.

Following Sinkler's initial submission, she and MassMutual engaged in a series of written exchanges and telephone calls regarding her claim.  MassMutual requested certain supporting documentation, including completed authorization forms so that it might access Sinkler's medical records, tax returns, and social security benefit information, as well as a description of her occupation, and verification of employment.  Sinkler's response was incomplete.  She provided limited medical authorizations and only some of the requested documentation on the grounds that further documentation was not necessary because the claim was uncontested.  She refused to provide employment information or authorization to contact her employer.

In early 2006, given the incomplete and contradictory nature of the medical records Sinkler submitted, MassMutual informed her that it would require an IME.  Sinkler requested that the exam focus on her psychological disabilities, inasmuch as her primary symptoms were those associated with depression.  On April 18, 2006, she submitted to an independent neuropsychological examination arranged by the carrier.  After administering an array of tests, the examining physician concluded that Sinkler was embellishing or feigning deficit during testing and recommended that her case history and self-report be judged against the objective record, including her complete medical records.  Later that year, MassMutual attempted to arrange for another IME, which Sinkler refused to attend.

As of July 2006, MassMutual had still received incomplete and inconsistent medical records covering only a portion of the disability period claimed by Sinkler; it had not received the required authorization to access additional medical records, and it had not received documentation supporting Sinkler's asserted pre-disability employment or income.  On July 19, 2006, MassMutual made a final request for the missing documentation, informing Sinkler that if

it did not receive the documentation by August 19, 2006, it would make its decision based on the information it had on file. On August 1, 2006, Sinkler informed MassMutual that she would not be providing any additional information and requested that MassMutual make a final determination on her claim.

On August 17, 2006, MassMutual denied Sinkler's claim. It explained the denial in a detailed letter setting forth the salient terms of the Policy, the history of the investigation into her claim, and the various failures of proof regarding medical, occupational, financial, and other pertinent information.

In April 2007, Sinkler submitted a second claim for Total Disability under the Policy based on major depression, spinal stenosis, and arthritis. The claim form indicated that she had a similar condition in 2003, that she had no employer so that her occupational duties and activities were "N/A" (but it did indicate that she had worked from December 2006 through March 2007), and that she was unable to work starting in February 2007. The claim form attached an Attending Physician's Statement from Sinkler's psychiatrist, reflecting a diagnosis of major depression and an inability to work starting in January 2007.

After receiving her claim, MassMutual requested that Sinkler provide information regarding her occupational duties and completed medical authorization forms. Although Sinkler declined to allow complete authorization, MassMutual was able to retrieve certain medical records from Sinkler's various treating physicians. Based on the record it accumulated, MassMutual found numerous indications that it determined ran counter to Sinkler's various diagnoses and her claims of a total inability to work for the claimed disability period—including an absence of doctor visits during key periods, extended lapses in treatment, tests results inconsistent with her diagnoses, and physician notes inconsistent with the submitted Attending

4

Physician's Statements.  MassMutual made repeated attempts to speak with Sinkler's physicians to resolve these apparent discrepancies, but MassMutual was unable to connect with them. Again, MassMutual informed Sinkler that she would need to submit to an IME to verify her claimed disability.  Again, MassMutual requested updated medical forms in connection with scheduling the IME, as well as authorization to arrange a functional capacity evaluation ("FCE"). And again Sinkler and her physicians failed to provide the requested information or to schedule the IME or FCE.

On August 1, 2008, after a final warning, MassMutual closed out Sinkler's second claim.

In February 2009, Sinkler contacted MassMutual, insisting that it was not warranted in closing her claim and threatening to sue.[3]  MassMutual thereafter reopened her second claim and requested additional medical and employment verification documentation, most of which this time it did receive.  Even so, MassMutual again concluded that the medical records did not support Sinkler's claimed total disability.  MassMutual also determined that Sinkler had provided no evidence to support her pre-disability occupation or income.  Moreover, in MassMutual's view, the evidence received established only that Sinkler had been employed as a senior systems analyst at Cherry Engineering Support Services, Inc. from May 2001 through January 2002; there was no evidence that she was employed when the Policy was issued or when her alleged disabilities began.

In an effort to obtain objective information regarding Sinkler's claimed disability, MassMutual, through a third party, advised her that it had scheduled an IME for August 25,

---

[3]   During this period, Sinkler filed several complaints against MassMutual with Virginia and Maryland authorities.  All of those investigations closed with no finding of wrongdoing on the part of MassMutual.

2009.  Sinkler's response was that she had revoked her authorizations and would not attend an IME.  She asserted that the Policy was not contestable, and therefore MassMutual had no right to obtain her medical records.  She also stated that MassMutual would have to make a decision on her two claims based on the information it had in hand.

Due to the lack of information, MassMutual concluded that it was unable to render any further decision on Sinkler's second claim.[4]

During the pendency of her second claim, Sinkler ceased making premium payments on the Policy.  On September 11, 2007, MassMutual sent her a notice of a quarterly premium payment due October 11, 2007.  When Sinkler failed to make that payment, MassMutual sent her several past due and reminder notices.  On December 3, 2007, MassMutual sent Sinkler a final reminder notice of past due premiums and advised her that to retain coverage, she should remit payment within 10 days.  She failed to do so.  In consequence, on December 18, 2007, MassMutual sent Sinkler a letter stating that coverage under the Policy had lapsed on November 11, 2007.

Thereafter, Sinkler filed a complaint in the Circuit Court of Prince George's County alleging breach of contract and a violation of Maryland's Unfair Claim Settlement Act, MD. CODE ANN., INS. § 27-303.  The case was removed to this Court as Civ. No. PJM 10-1221 and subsequently consolidated with the declaratory judgment action MassMutual had filed here.

## II.

Under Rule 56(a), summary judgment is appropriate when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A dispute of fact

---

[4]  MassMutual received additional medical records in the course of discovery in this litigation, but continues to maintain that those records fail to support Sinkler's claimed disabilities.

is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting FED. R. CIV. P. 56(e)). In considering a motion for summary judgment, the Court must "draw all justifiable inferences in favor of the nonmoving party." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp*, 477 U.S. at 323-24).

Although *pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), they "must still set forth facts sufficient to withstand summary judgment." *Symeonidis v. Paxton Capital Grp., Inc.*, 220 F. Supp. 2d 478, 480 n.4 (D. Md. 2002) (citations omitted).

### III.

The material facts are not in dispute. Rather, the parties disagree over whether, given the terms of the Policy, MassMutual complied with its contractual obligations when it denied Sinkler's first claim and when it required an IME as a condition of continuing to review her second claim. All issues flow from a determination of these issues. If MassMutual's denials were warranted, then Sinkler was not "Disabled" as defined by the Policy when she ceased to

7

pay premiums, and the Policy thereafter lapsed.  And if the denials were proper, there can be no

basis for Sinkler's claims in this litigation.[5]

### A.

MassMutual argues that it properly denied Sinkler's first claim because she failed

to provide the documentation required to substantiate her claimed disability and her income

before and during the alleged disability.  It argues that it was permitted to require an IME as a

condition of allowing Sinkler's second claim.  Sinkler responds that she provided sufficient

documentation to substantiate her first claim and that an IME in connection with the second

claim was unnecessary and inappropriate.  She points to the Policy's incontestability clause,

arguing that MassMutual was precluded from denying any claim submitted more than two years

after the issuance of the Policy.  The Court considers these arguments.

"Under Maryland law, when deciding the issue of coverage under an insurance

policy, the primary principle of construction is to apply the terms of the insurance contract

itself." *Kendall v. Nationwide Ins. Co.*, 348 Md. 157, 166, 702 A.2d 767, 771 (1997) (quoting

*Bausch & Lomb v. Utica Mut.*, 330 Md. 758, 779, 625 A.2d 1021, 1031 (1993)).  An insurance

contract is to be viewed as a whole, without emphasis on any particular provision, and with each

clause, sentence, and provision being given force and effect.  *See Empire Fire and Marine Ins.,*

---

[5]    In addition to allegations of breach of contract and violation of the Unfair Claims Settlement
Act set forth in her pleadings, Sinkler has alleged a host of additional wrongdoings against
MassMutual throughout her filings.  For example, she asserts that MassMutual attempted to alter
the date of the Policy by producing in litigation a copy that reflected a "date of issue" of June 2,
2009, and a "policy date" of April 11, 2002.  Although the "date of issue" is apparently the date
the duplicate copy was generated, Sinkler relies on this document to claim fraudulent
misstatement, perjury, and assorted other civil and criminal liabilities.  Sinkler also contends that
MassMutual's use of consulting physicians to render opinions on her claims constitutes the
unauthorized practice of medicine and corporate practice of medicine.  None of these
allegations—raised for the first time in the summary judgment briefing—is relevant to the issues
in question, and, in any event, the Court finds none of them persuasive.

*Co. v. Liberty Mut. Ins. Co.*, 117 Md. App. 72, 96, 699 A.2d 482, 493-94 (1997).  Denial of an

insurance claim is proper where the insured person fails to comply with the requirements of the

insurance policy.  *See, e.g., Gallagher v. Reliance Standard Life Ins., Co.*, 305 F.3d 264, 276 (4th

Cir. 2002) (finding denial of a disability insurance claim to be proper where the insured "failed

to submit, as required under the Plan, objectively satisfactory proof of a disability that made him

incapable of performing each and every material duty of his occupation"); *Phillips v. Allstate*

*Indemn. Co.*, 156 Md. App. 729, 743, 848 A.2d 681, 689 (2004) (affirming summary judgment

for the insurer where the insured refused to answer questions during the examination under oath,

which he was required to submit to by the terms of the insurance policy).

   Here the Policy provides for a benefit in the event of a "Total Disability," which it

defines as the occurrence of a sickness or injury that precludes the insured from performing the

main duties of her "Occupation" or from working at any other occupation, and for which the

insured is under a doctor's care.  (Policy at 2.)  The Policy defines "Occupation" as the insured's

profession or business at the start of the Disability.  (*Id.*)  To receive any benefits, the insured

must comply with certain "Proof of Loss Requirements" designed to substantiate the claimed

Disability and the insured's income before and during said Disability, including, in the words of

the Policy, "written proof of Disability" and "satisfactory proof of the Insured's Income before

and during Disability."  (*Id.* at 5.)  The Policy specifically states that MassMutual may require

the following documents as proof of income: "W-2 forms(s), federal and state income tax forms

and related schedules, business or professional records, and other tax records and financial data."

(*Id.*)  The Policy also provides that MassMutual can have the insured examined by a doctor as

often as reasonably necessary while a claim is pending.  (*Id.*)  And, to be sure, the Policy also

includes a provision commonly referred to as an incontestability clause, which provides: "After

two years from the date this Policy becomes Effective, only fraudulent misstatements in the application may be used to void this Policy or to deny a claim for a Disability that starts after the two year period."[6] (*Id.* at 7.)

The uncontested evidence in the record is crystal clear that, with respect to both of her submitted claims, Sinkler failed to comply with several of the Proof of Loss Requirements set forth in the Policy. She failed to submit "written proof of Disability" in two material respects. First, she failed to provide sufficient documentation of her "sickness or injury." At the same time, she declined to authorize MassMutual to speak with her treating physicians or review her complete medical records, and the forms and records that she did supply were deficient in numerous respects and inconsistent with her claimed disabilities. Second, she failed to provide sufficient documentation of her "Occupation." Bearing in mind, after all, that a disability income policy was involved, Sinkler never provided, despite repeated requests from MassMutual, an objective occupational description, nor did she furnish any evidence of her employment at the onset of her alleged disability. As "Total Disability" is defined in reference to inability to perform the "main duties of []her occupation," written proof of Disability reasonably required documentation of both the main duties of her occupation and the medical reasons why she was no longer able to perform those duties. *See Gallagher*, 305 F.3d at 276; *Massachusetts Cas. Ins. Co. v. Rief*, 227 Md. 324, 328, 176 A.2d 777, 779 (1962) (interpreting occupational disability policies to require coverage where the disability renders the insured

---

[6] This clause is consistent with Maryland law. *See* MD. CODE ANN., INS. § 15-208(a) (requiring health insurance policies to include the following provision: "After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two-year period"); *Mutual Life Ins. Co. of New York v. Insurance Comm'r for State of Maryland*, 352 Md. 561, 569, 723 A.2d 891, 895 (1999).

unable to perform "the substantial and material acts of his own occupation in the usual or customary way"). Additionally, Sinkler failed to provide "satisfactory proof of [her] Income before and during Disability." The Policy is quite clear about the types of documentation MassMutual might require—including W-2 forms, federal and state income tax forms and schedules, and other necessary tax records and financial data—none of which Sinkler was willing to provide.

Sinkler, therefore, as a matter of law, has failed to meet her burden to prove that she substantially complied with the Proof of Loss Requirements, i.e., that she (1) "furnished the insurer with information reasonably requested . . . to the extent that it is reasonably possible" for her to do so, and (2) "expressly or impliedly promises to submit, when and as it is reasonably possible for [her] to do so, the balance of the information." *Hartford Fire Ins. Co. v. Himelfarb*, 355 Md. 671, 690-91, 736 A.2d 295, 306 (1999); *see also Aetna Cas. & Sur. Co. v. Harris*, 218 Va. 571, 578, 239 S.E.2d 84, 88 (1977) ("The burden of proving compliance with the necessary requirements of an insurance policy as to proof of loss, or the waiver of such compliance on the part of the company, is on the insured; and, if he fails to establish the same by a preponderance of the evidence his action must fail."). These failures fairly entitled MassMutual to deny Sinkler's claims.

In addition to failing to meet the Proof of Loss Requirements, Sinkler refused to submit to the IMEs that MassMutual was contractually entitled to require "as often as reasonably necessary." Although she did submit to a single IME for her claimed psychological disability, that exam resulted in a finding by the physician that Sinkler was embellishing or feigning her condition. When MassMutual made numerous attempts to schedule further IMEs for both Sinkler's first and second claims, she repeatedly refused to comply. This put her at odds with the

11

terms of the Policy.  Given the various failures of proof with regard to her claimed medical

condition, it was reasonable for MassMutual to require the follow-up IME to obtain objective

verification of Sinkler's claimed Disability.  *Cf. Smart v. State Farm Mut. Auto. Ins. Co.*, 126

Md. App. 511, 517, 730 A.2d 690, 693 (1999) (finding that an insurer's contractual right to

require a medical examination should be construed by the application of a reasonableness rule).

This, too, provides an independent basis for MassMutual to deny both of Sinkler's claims.  *See*

*Huntt v. State Farm Mut. Auto. Ins. Co.*, 72 Md. App. 189, 198, 527 A.2d 1333 (1987) ("State

Farm therefore had a contractual right to deny . . . benefits based on her failure to comply with

the condition precedent that she submit to a medical examination by a physician of State Farm's

choice.").

   Sinkler's only proffered explanation for failing to comply with the myriad of

contract provisions is that the incontestability clause precluded MassMutual from denying any

claim after the Policy has been in place for two years.  Sinkler fundamentally misunderstands

this Policy provision.  The incontestability clause provides only that after the Policy has been in

effect for two years, MassMutual cannot void the Policy or deny a claim for a Disability that

began after the two year period unless there were fraudulent misstatements in the application.

The purpose of this clause is to provide the insured with finality as to the existence and terms of

her coverage and to avoid uncertainty regarding future claims.  *See Mutual Life Ins. Co. of New*

*York v. Insurance Comm'r for State of Maryland*, 352 Md. 561, 568-71, 723 A.2d 891, 894-95

(1999) (describing the history and purpose of incontestability clauses in insurance policies).

However, the incontestability clause does not, as Sinkler would have it, obviate the other terms

of the Policy or release her from the obligation to submit a valid, documented claim of Disability

before receiving any benefits.  She was at all times bound by the Proof of Loss Requirements to

establish that she had a Disability as defined by the Policy, notwithstanding the incontestability clause.

The Court finds that MassMutual acted within its contractual rights when it denied Sinkler's first claim and when it required that she submit to an IME as a condition of considering her second claim.

**B.**

Having determined that MassMutual properly denied Sinkler's claims, the Court considers whether MassMutual properly terminated the Policy for lapse of premium payments.

In Maryland, "[i]t is well-settled that if an insurance policy contains a provision for its forfeiture for nonpayment of premiums, the insurance company may avoid the policy on the insured's failure to pay a premium." *Rubinstein v. Jefferson Nat. Life Ins. Co.*, 268 Md. 388, 391, 302 A.2d 49, 52 (1973) (citing *Alexander v. Life Ins. Co.*, 166 Md. 112, 170 A. 522 (1934); *Burns v. Prudential Ins. Co.*, 162 Md. 228, 159 A. 606 (1932)); *see also McFarland v. Farm Bureau Mut. Auto, Ins. Co.*, 201 Md. 241, 251, 93 A.2d 551, 556 (1953).

Here the Policy provides that premiums are due in advance and "must be paid within 31 days after the due date" for the Policy to remain in force.[7] (Policy at 4.) If premiums are not paid within the prescribed time period, the Policy will terminate. (*Id.*) Further, the Policy provides a waiver of premium benefit "[a]fter the Insured has been Disabled for 90 days … for as long as the Insured remains Disabled." (*Id.* at 3.)

It is undisputed that Sinkler failed to make a payment for the premium that became due on October 11, 2007, despite receiving multiple past due notices from MassMutual. Because she was not Disabled, as defined by the Policy, at the time she failed to make this

---

[7]   Maryland law requires a 31 day grace period to make premium payments before an insurer can terminate a policy. *See* MD. CODE ANN., INS § 15-209(a).

payment—and because she certainly had not been Disabled for 90 days—Sinkler did not qualify

for the waiver of premium benefit.  Accordingly, as a matter of law, MassMutual was entitled to

terminate the Policy once the 31 day grace period expired with no payment having been made,

and the Policy lapsed on November 11, 2007.  *See Rubinstein*, 268 Md. at 391, 302 A.2d at 52.

### C.

Finally, Sinkler's claims for breach of contract and violation of Maryland's Unfair

Claim Settlement Act, MD. CODE ANN., INS. § 27-303, also fail as a matter of law.

First, there is no evidence to support a separate claim for breach of contract.  As

explained in detail above, MassMutual complied with the terms of the Policy in denying

Sinkler's claims and in terminating the Policy upon her failure to make premium payments.

Second, no action lies under the Unfair Claims Settlement Act, which makes it a

violation for an insurer to "refuse to pay a claim for an arbitrary or capricious reason based on all

available information."  MD. CODE ANN., INS. § 27-303(2).  "The Unfair Claim Settlement

Practices Act explicitly states that penalties for violations of the Act are limited to the imposition

of administrative penalties on the insurer by the Commissioner; it creates no state cause of action

for the insured."  *Connecticut Gen. Life Ins. Co. v. Ins. Comm'r for the State of Maryland*, 371

Md. 455, 460, 810 A.2d 425, 427-28 (2002); MD. CODE ANN., INS. § 27-301(b); *see also Hartz v.*

*Liberty Mut. Ins. Co.*, 269 F.3d 474, 476 (4th Cir. 2001) (noting that, under Maryland law, there

is no private cause of action in tort or statute for failure to settle a claim with an insured);

*Johnson v. Federal Kemper Ins. Co.*, 74 Md. App. 243, 248, 536 A.2d 1211, 1213 (1988) (same).

## IV.

For the foregoing reasons, MassMutual's Motion for Summary Judgment [Docket No. 77] is **GRANTED**, and Sinkler's Motion for Summary Judgment [Docket No. 70] is **DENIED**.

A separate Order will **ISSUE**.

/s/
_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**July 23, 2012**